**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**JOHNNY C. SIMPSON and**
**ELIZABETH SIMPSON,**

               **Plaintiffs,**

                                        **CASE NO. 5:17cv062-KGB**

**v.**

**WRIGHT MEDICAL GROUP, INC. AND**
**WRIGHT MEDICAL TECHNOLOGY, INC.,**

               **Defendants.**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO WRIGHT MEDICAL GROUP, INC.'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT RE: PERSONAL JURISDICTION**

      Plaintiffs Johnny C. Simpson and Elizabeth Simpson's Response in Opposition to

Defendant Wright Medical Group, Inc.'s ("WMG") Motion to Dismiss for Lack of Personal

Jurisdiction (Doc. 3), demonstrating to the Court that WMG has held itself out to be the designer,

manufacturer and marketer of the defective Profemur hip device implanted in Plaintiff Johnny

Simpson in Arkansas and that the Court has personal jurisdiction over WMG.  Thus, as detailed

below, WMG's motion should be denied in its entirety.

**I.**      **FACTS**

      Defendant WMG is engaged in the business of designing, manufacturing, distributing,

selling, marketing, and placing into the stream of commerce various orthopedic products,

including the Wright Medical Profemur device at issue in this matter. (Doc. 1 at ¶ 5).  WMG has

specifically conducted these activities in Arkansas. (Doc. 1 at ¶¶ 6, 8-9). Plaintiff Johnny

Simpson had a Wright Profemur prosthetic device implanted in his left hip during a total hip

replacement surgery (or arthroplasty) on December 14, 2012. (Doc. 1 at ¶ 10). The implant

surgery was performed at the St. Vincent Infirmary Medical Center in Little Rock, Arkansas.

(Doc. 1 at ¶ 12).  Before or during the December 14, 2012, surgery, Defendant WMG arranged for the Wright Medical Profemur components to be delivered to the hospital here in Arkansas. (Doc. 1 at ¶ 17).  Profemur hip components implanted in Johnny Simpson included a Profemur Plus CoCr modular neck and a titanium stem. (Doc. 1 at ¶¶ 18, 23).  Just four and a half years later, Johnny Simpson began suffering from pain and had elevated Cobalt levels; the Profemur device had failed due to corrosion and fretting at the connection between the stem and the neck (sometimes called the "trunnion"), necessitating revision surgery to remove and replace those components. (Doc. 1 at ¶¶ 22-27). Upon revision, it was clear that the Wright Medical Profemur device had corroded and resulted in a "pseudo-tumor like reaction," "atrophic abductors" and trunnionosis. (Doc. 1 at ¶¶ 23-25, 27).

Although WMG now attempts to disclaim any involvement in the development, sale or marketing of the Wright Medical Profemur hip device, that was not always the case. WMG acquired Cremascoli Ortho and its product lines, including the Profemur line of hip products, in 1999. (Doc. 1 at ¶ 29). After the acquisition, WMG re-designed the Profemur modular artificial hip stem and neck and expanded the line to include additional stems and necks. (Doc. 1 at ¶ 30). In 2009, WMG began to offer Profemur modular necks made of a Cobalt Chromium ("CoCr") alloy, and a CoCr Profemur neck component was implanted in Johnny Simpson. (Doc. 1 at ¶ 33).

WMG has further intentionally availed itself of the aid of a federal court located in Arkansas.  In a previous action, WMG filed suit expressly representing that it does business as WMT. (Doc. 1 at ¶ 34; *see also* Exh. 1 (Compl. in Case No. 3:10-cv-33), case style and introductory paragraph). Likewise, in its SEC filings as early as 2001, Wright Medical Group

claimed it was designing, manufacturing, and marketing bio-orthopaedic products, including the Profemur device. (Doc. 1 at ¶¶ 35-37; *see also* Exhibit 2 WMG 2001 10-K at pp. 3-4, 8, 16).[1]

## II.   LEGAL STANDARD

A challenge to the court's personal jurisdiction is a threshold issue. *MSI, Inc. v. Botello*, 2001 WL 1134741, at *2 (Ark. Ct. App. Sept. 26, 2001). To survive a motion attacking personal jurisdiction at the motion to dismiss stage, Plaintiffs need only make a *prima facie* showing of jurisdiction. *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988). Although Plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991) (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)).

Personal jurisdiction over a non-resident defendant in a diversity case is proper when the exercise of jurisdiction is authorized by the long-arm statute of the forum state and comports with the Due Process Clause. *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). Arkansas' long-arm statute authorizes state courts "to exercise jurisdiction to the fullest extent due process will allow." *Davis v. St. John's Health Sys., Inc.*, 71 S.W.3d 55, 59 (Ark. 2002). Thus, this Court need only address the Constitutional due process issue.  *Id*. at 58. The Plaintiffs' *prima facie* showing of jurisdiction must be tested, and this may include consideration of affidavits and exhibits supporting or opposing the motion. *K–V Pharm. Co.*, 648 F.3d at 592. Where no hearing or trial has been held, courts examine the facts in the light most favorable to the non-moving parties – here the Plaintiffs – and resolve all factual conflicts in

---

[1] All pinpoint citations to SEC filings are to the PDF page numbers matching the physical pagination, not to the intra-page numbers.

their favor. *Epps v. Stewart Info. Svcs. Corp.*, 327 F.3d 642, 647 (8th Cir.2003); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Plaintiffs have pled facts that remain uncontested, (*see, e.g.*, Doc. 1 at ¶ 34), and provided further documentary evidence supporting this Court's personal jurisdiction over WMG. Plaintiffs have met their burden, and WMG's motion, at most, demonstrates question of fact. WMG's motion should be denied.

## III.   ARGUMENT AND CITATIONS OF AUTHORITIES

### A.   This Court has personal jurisdiction over Defendant WMG.

WMG is subject to this Court's jurisdiction because of its self-proclaimed active role in the design and development of the Wright Medical Profemur hip system, the very medical device that was delivered to a hospital in Little Rock and implanted in Plaintiff Johnny Simpson. (Doc. 1 at ¶¶ 5-6, 28-37). Moreover, Wright Medical Technology, Inc. ("WMT"), is merely the alter ego of WMG.  (*See* Doc. 1 at ¶¶ 35-38).  As such, WMT has acted on behalf of WMG in Arkansas.

### 1.   WMG's 2001 admissions alone are sufficient to give this Court personal jurisdiction.

As alleged in the Plaintiffs' Complaint, (Doc. 1 at ¶ 35), documents WMG filed in 2001 with the SEC show that WMG claimed to the United States government, its investors, and the world that *it* was the designer, manufacturer and marketer of the Profemur Modular Neck. (Exh. 2 at pp. 3–4, 8, & 16). In Item 1 of its 2001 Form 10-K, in the "Business/ Overview" subsection, WMG states: "Wright Medical Group, Inc. (the 'Company') is a global orthopaedic device company specializing in the design, manufacture and marketing of reconstructive joint devices and bio-orthopaedic materials." (Exh. 2 at p. 3, also cited in Doc. 1 at ¶ 35). In the next subsection of its 2001 Form 10-K, titled "History" WMG further states:

4

> The Company was incorporated on November 23, 1999 as a Delaware corporation (previously named Wright Acquisition Holdings, Inc.) and had no operations until an investment group led by Warburg, Pincus Equity Partners, L.P. ("Warburg") acquired majority ownership of the Company's predecessor, Wright Medical Technology, Inc. ("Wright" or the "Predecessor Company") in December 1999. This transaction, which represented a recapitalization of Wright and the inception of the Company in its present form, reduced the Company's debt and provided investment capital, thus allowing the Company to build on the Predecessor Company's respected brand name and strong relationships with orthopaedic surgeons developed during their fifty year history.

(Exh. 2 at p. 4).  Thus, as of the end of 2001, WMG had acquired a company named

"Cremascoli" which WMG considered it to be its "predecessor."

In the next paragraph of the "History," WMG, or "the Company" as it refers to itself,

provides:

> Shortly thereafter, a new management team was put in place and on December 22, 1999, the **Company acquired Cremascoli Ortho Group** ("Cremascoli"), based in Toulon, France. This acquisition extended **the Company's product offerings**, enhanced the **Company's product development** capabilities, and expanded the Company's European presence. As a result of combining Cremascoli's strength in hip reconstruction with Wright's historical expertise in knee construction and bio-orthopaedic materials, **the Company now offers orthopaedic surgeons** a broad range of reconstructive joint devices and bio-orthopaedic materials in over 40 countries.

(Exh. 2 at p. 4 (emphasis added)). So, as of the end on 2001, **WMG** offered orthopaedic

surgeons a broad range of reconstructive devices. (Exh. 2 at p. 4).

WMG's ties to the Profemur hip are even more clear and direct: "Through the

Company's acquisition of Cremascoli, several hip implant products designed for the European

market, including the . . . PROFEMUR-TM-R Hip System, were acquired. . . . The

PROFEMUR-TM-R hip stem is a revision replacement implant with a patented modular femoral

neck component. . . ." (Exh. 2 at p. 8; cited in Doc. 1 at ¶ 37). In other words, WMG expressly

represented that *it* acquired the Profemur hip system.[2]

After presenting a chart of its products in development that lists the Profemur™ as a USA

modular hip, WMG further states:

> Modular hip systems are growing in popularity, especially in revision replacement
> hip implant procedures. The PROFEMUR-TM-R was designed by Cremascoli for
> the European market. Although the Company is currently selling this product in
> the U.S., the Company is also developing a modified version and instrumentation
> to address the needs of U.S. surgeons. The new system, the PROFEMUR-TM-
> USA Modular Hip will capitalize on the successful clinical history of the current
> PROFEMUR-TM-R product while incorporating new technology into the design.

(Exh. 2, p. 16). Here, WMG, "the Company," unequivocally states that *it* is developing the

Profemur modular hip and instrumentation for U.S. surgeons, which will incorporate new

technology into the design.

WMG today claims that it has no employees (Doc. 3-2, ¶ 8), and provides contentions

that contradict its admission that it designed, manufactured and distributed the Profemur hip

system. (Doc. 3-2, ¶ 17).[3]   In 2001, WMG touted itself as the successor of Cremascoli and the

designer of the product at issue. (Exh. 2 at p. 16). As the designer, manufacturer and marketer of

the defective Profemur device that was sold in Arkansas, implanted into an Arkansas Plaintiff by

an Arkansas surgeon at an Arkansas hospital, and that failed and harmed the same Plaintiff in

Arkansas, WMG is subject to personal jurisdiction of this Court in Arkansas.

---

[2] It should be undisputed in this case that the Profemur R hip system first introduced the
Profemur hip devices to the United States.
[3] Confidential Documents produced by Wright Medical in other prior Profemur device litigation,
and presumably to be produced in discovery here, will dispute the contention that WMG has no
employees.

## 2.    WMG's recent SEC admissions further support personal jurisdiction.

The Court should also consider the statements that WMG continues to make in its filings with the SEC. Attached as Exhibit 7 is WMG's Form 10-Q for the period ending March 31, 2014, dated April 30, 2014, signed by Robert J. Palmisano, WMG Pres. and Chief Executive Officer.  In the "Notes to Condensed Consolidated Financial Statements" of that Form 10-Q is a section titled "Product Liability."  (Exh. 7 at pp. 41–44). This section provides a detailed disclosure and discussion of Profemur litigation, from WMG's perspective. In that discussion, WMG had every opportunity to say that litigation involved its subsidiary, WMT, for which it ultimately had no legal liability or financial responsibility. Indeed, in several other places throughout this Form 10-Q WMG refers expressly to subsidiary WMT. (*See* Exh. 7 at pp. 40, 44, 66 & 68). Moreover, WMG had every opportunity to state that the Profemur hip system was a product designed, marketed and distributed by its subsidiary, WMT, for which WMG ultimately is not liable. But that is *not* what WMG said.  Rather, it said:

> We have received claims for personal injury against us associated with fractures of our PROFEMUR ® long titanium modular neck product (PROFEMUR ® Claims). The overall fracture rate for the product is low and the fractures appear, at least in part, to relate to patient demographics. Beginning in 2009, ***we began offering a cobalt-chrome version of our PROFEMUR® modular neck***, which has greater strength characteristics than the alternative titanium version. Historically, we have reflected our liability for these claims as part of our standard product liability accruals on a case-by-case basis. However, during the quarter ended September 30, 2011, as a result of an increase in the number and monetary amount of these claims, management estimated our liability to patients in North America who have previously required a revision following a fracture of a PROFEMUR® long titanium modular neck,[4] or who may require a revision in the future. Management has estimated that this aggregate liability ranges from approximately $17 million to $28 million. Any claims associated with this product outside of North America, or for any other products, will be managed as part of our standard product liability accruals. (Exh. 7 at pp. 41-42) (emphasis added).

---

[4] The Profemur cobalt-chrome Profemur® modular neck is the specific product at issue in this case.

(Exh. 7 at pp. 41 – 42).   WMG, as it did in its 2001 Form 10-K filing with the SEC, again claims the Profemur product, as well as potential liability, as its own.

WMG provides other details in its 10-Q belying its assertion that personal jurisdiction is lacking. For instance, WMG also discloses that it sold its "OrthoRecon operating segment," the manufacturer of its hip and knee products, and all of its assets, to a Cayman Island corporation named Microport for $285 million, paid in cash. (Exh. 7 at p. 24).   WMG does not state that the $285 million is the property of its subsidiary, WMT. Instead, WMG asserts that *it* realized a financial gain as a result of the transaction: "As a result of the transaction, *we* recognized approximately $24.3 million as the gain on disposal of the OrthoRecon business . . . ."  (Exh. 7 at p. 24). The Form 10-Q further states: "Certain liabilities associated with the OrthoRecon business, including product liability claims associated with hip and knee products sold prior to the closing, were not assumed by MicroPort." (Exh. 7 at p. 26).   This leads to questions regarding whether WMG has left its subsidiary WMT without any ability to satisfy Profemur device judgments.

Because no discovery has yet occurred, Plaintiffs do not yet have the definitive evidence they will seek regarding this transaction. But it appears suspicious that WMG sold the assets of the subsidiary that it claims in the instant motion was the manufacturer and distributor of this product for $285 million, but that *it* received the financial benefit of that sale. If WMG "raided" the coffers of WMT of the $285 million in cash realized in the sale of the Profemur hip product business, that evidence could support piercing the corporate veil of WMG. If WMG is not subject to jurisdiction because of its self-proclaimed ownership of the Profemur hip system alone, the piercing of the corporate veil renders the conduct of WMT in Arkansas the conduct of WMG.

### 3.   WMG has argued to other courts that injured Plaintiffs should be required to litigate in their home States in lieu of WMG's home state.

WMG has previously sought to force plaintiffs suing it over the Profemur device to litigate in the states in which they were injured, contrary to its present position.  WMG's Reeves Declaration avers that WMG is a Delaware corporation with its principal place of business in Tennessee. (Doc. 3-2 at ¶ 3). One would think that litigating a Wright Medical Profemur case against WMG would properly lie at least in the State where WMG has its principal place of business. However, in response to out-of-state plaintiffs' efforts to litigate Wright Medical Profemur cases in Tennessee, WMG  repeatedly filed motions to dismiss for *forum non conveniens,* arguing that the litigation more properly belongs in the State where each plaintiff's injury occurred. Plaintiff's counsel has personally experienced this effort by WMG to avoid litigating in Tennessee, where it is headquartered. (Exh. 6 WMG *Forum Non Conviens* motions filed in Shelby County, Tennessee).[5]

The Wright Medical Defendants have demonstrated a pattern of jurisdictional gymnastics to avoid litigating a Profemur case in their home State Court. Indeed, in another case filed in the Shelby County Tennessee Circuit Court, Wright Medical – the very day after the Complaint was filed, and before either WMG or  WMT was served – removed the case to the United States District Court for the Western District of Tennessee.  *See Harrison v. Wright Med. Tech., Inc., No*. 2:14-CV-02739-JPM, 2015 WL 2213373, at *1 (W.D. Tenn. May 11, 2015).  The federal court rejected this "jack-rabbit" removal, agreeing with the plaintiffs that the removal statute did

---

[5] *See Exhibit 6*, including Defendant's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens*, *Mustard v. Wright Medical Technology, Inc. and Wright Medical Group, Inc.*, Circuit Court of Shelby County, Tennessee, 13th Judicial District at Memphis, Case No. CT-001090-14; and Defendant's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens*, *Wren v. Wright Medical Technology, Inc. and Wright Medical Group, Inc.*, Circuit Court of Shelby County, Tennessee, 13th Judicial District at Memphis, Case No. CT-003747-13.

not permit such gamesmanship.  *Id.* at *4-*5.  The court further rejected the Wright Medical

Defendants' argument that because "all evidence regarding Plaintiffs' alleged injuries, medical

care, treatment, use of the product at issue, and alleged damages is found in Oklahoma," the

plaintiffs had engaged in forum shopping.  *Id.* at *6 (quoting Wright Medical's brief). When it is

sued in its home state court, WMG seeks to litigate elsewhere because that is where most of the

evidence is located, but when WMG is sued in the location where most of the evidence is

located, it argues that the Court there lacks personal jurisdiction.  WMG simply cannot have it

both ways.

###### B.      WMG's actions demonstrate sufficient connections to this forum.

WMG has intentionally sold its Profemur hip device in this forum, where that device was

implanted in an Arkansas resident at a hospital in this forum.  The device further failed, harming

an Arkansas resident, and the defective Profemur components were surgically removed and

replaced in this forum.   At this stage of the litigation, with no jurisdictional focused discovery,

Plaintiffs have no testimonial evidence to counter Ms. Reeves' Declaration. But the Profemur hip

products WMG acquired when it purchased Cremascoli in 1999 are being distributed and sold in

the State of Arkansas, which in fact occurred here. (Doc. 1 at ¶ 12). The traditional notions of

fair play and substantial justice are not violated by the designer, manufacturer, and marketer of

the Profemur device answering in a court in Arkansas to a plaintiff who was injured by this

defective product that was sold to him, implanted in his body, failed, harmed him, and was

revised, all in the State of Arkansas.

The Arkansas state law governing personal jurisdiction is codified at §16-4-101. ARK.

CODE ANN. § 16-4-101 (2017).  The definition of "person" includes corporations and other legal

or commercial entities, whether or not such entity is organized under the laws of Arkansas. *Id.*

The Arkansas long-arm statute further provides that personal jurisdiction can be exercised over all persons "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." *Id.* And service may be made within or outside the state. *Id.*

Due Process in regards to personal jurisdiction mandates that a court may exercise personal jurisdiction over a nonresident so long as there are "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (*quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S. Ct. 339 (1940)). The conduct of the nonresident defendant must merely establish a connection with the forum state "such that he should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287, 100 S. Ct. 559, 562 (1980). The Supreme Court has also outlined two types of personal jurisdiction: specific and general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S. Ct. 1868 (1984). "Specific jurisdiction can only be found if the controversy is 'related to' or 'arises out of' the defendant's contacts with the forum state. General jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action." *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006) (*quoting Helicopteros,* 466 U.S. at 415, 104 S. Ct. 1868).

The Eighth Circuit weighs five factors in a personal jurisdiction due process inquiry: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties." *Dever,* 380 F.3d

at 1073-74 (*quoting Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.

1996)); *see also Barnett v. Kohler*, Case No. 4:05-CV-1328 GTE. (W.D. Ark. Mar. 3, 2006).

WMG is subject to specific personal jurisdiction in Arkansas because it expressly claims

that it was the designer of the device that was distributed, sold, implanted, failed and revised in

Arkansas, injuring an Arkansas resident.[6]  Arkansas obviously has an interest in providing a

forum for its residents and WMG itself believes that the state of the Plaintiffs' residence,

treatment, and injury is the most convenient forum.  (*See*, III. A.B, *supra*).

**C.      Because WMT is the alter ego of WMG, the corporate veil should be pierced.**

Even if WMG's admissions were disregarded, WMT has acted merely as the alter ego of

WMG, and the corporate veil should be pierced. Arkansas law holds that, "[t]he conditions under

which the corporate entity may be disregarded or looked upon as the alter ego of the principal

stockholder vary according to the circumstances of each case. The doctrine is founded in equity

and is applied only when the facts warrant its application to prevent an injustice." *Humphries v.

Bray,* 271 Ark. 962, 966 611 S.W.2d 791, 793 (Ark. 1981), citing *Aetna Cas. & Sur. Co. v.

Stover*, 327 F.2d 288 (8th Cir. 1964). A recent law review article explains when piercing the

corporate veil is appropriate under Arkansas law:

> The author of an earlier treatise listed these eleven factors as being the
> most important in determining whether, in the context of subsidiary corporations,
> the parent had improperly dominated the subsidiary so as to justify piercing: (1)
> the parent corporation owned all or substantially all of the subsidiary's stock; (2)
> the parent and subsidiary had common directors or officers; (3) the parent
> financed the operations of subsidiary; (4) the parent caused the subsidiary to have
> been incorporated; (5) the subsidiary was grossly inadequately capitalized; (6) the

---

[6] Numerous Wright Profemur devices were sold, distributed, marketed and/or implanted in
Arkansas. However, even if the device at issue in this case were the *only* contact WMG had with
the forum, that contact would be sufficient to support specific personal jurisdiction. *See*, *e.g.*,
*McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 222-223 (1957) (holding that the Due Process clause
did not preclude California court from entering a binding judgment on a non-resident defendant
who did not have any agents or offices in that state).

parent paid the salaries, expenses and losses of the subsidiary; (7) the subsidiary's assets came solely from the parent, and the subsidiary conducted business only with the parent; (8) the parent's records referred to the subsidiary as a department or division of the parent, and the parent's records reflected the subsidiary's business as its own; (9) the parent used the property of the subsidiary as its own; (10) the directors or executives of the subsidiary acted on behalf of the parent rather than independently in the interest of the subsidiary, and (11) corporate formalities for the subsidiary were not observed.

The author of that treatise also suggested that it was necessary to show some sort of impropriety in order to justify piercing, and listed these seven possibilities as bases for demonstrating such wrong-doing: (1) actual fraud; (2) violation of a statute; (3) stripping the subsidiary of its assets; (4) misrepresentation; (5) estoppel; (6) torts; or (7) other cases of wrong or injustice. (citations omitted).

Carol R. Goforth, *A Review of Piercing the Veil Cases in Arkansas*, ARK. L. NOTES 2011, pp. 17-28.

Here, the facts and equity justify piercing the corporate veil.[7] Many of the eleven factors, that weigh in favor of piercing are present here and overlap, including:

- Defendant WMT is a wholly owned subsidiary of WMG. (Doc. 3-2 at ¶¶ 4, 9).

- WMG and WMT have the identical corporate address. (*Compare* Exhs. 3 and 4).

- Defendants WMT and WMG have identical corporate officers (Compare Exh. 3 with Exhs. 4 and 5).

- WMG holds all "convertible debt associated with the consolidated global operations of the operating subsidiaries for which it acts as parent." (Doc. 3-2 at ¶ 10).

- Through its sale of the OrthoRecon business to Microport, WMG has potentially left WMT grossly undercapitalized. The officers of WMT, who are the same

---

[7] Additional scholarship analyzing the doctrine of piercing the corporate veil in Arkansas suggests that Arkansas' courts regularly utilize the doctrine. *See, e.g.*, Robert B. Thompson, *Piercing the Corporate Veil: An Empirical Study*, 76 CORNELL L. REV. 1036, 1039 (1991) (finding that Arkansas courts pierced the veil nearly 40 percent of the time); Peter Oh, *Veil Piercing*, 89 TEX. L. REV. 81, 115 (2010) (finding that piercing the corporate veil happened in over 56% of cases); see also, STEPHEN B. PRESSER, PIERCING THE CORPORATE VEIL, § 2:4. Arkansas (stating "it is particularly dangerous to fail to adhere to corporate formalities in Arkansas.").

officers as WMG, were not acting in WMT's best interest by potentially leaving it unable to satisfy Wright Profemur judgments.

- WMG treated WMT's assets as its own, claiming that it, not WMT, saw a financial profit from the sale. Such claims demonstrate that corporate formalities for WMT are not faithfully observed. (*See*, Exh. 7 at pp. 24-26).

- WMG's statements characterize WMT as a department or division of WMG, and WMG treats WMT's business as its own. (Exhs. 1 & 7 at pp. 24-26).

The facts alleged and documentary evidence adduced by Plaintiffs show an improper domination of WMT by its parent WMG. Moreover, facts suggesting impropriety are present, lending further support to piercing the corporate veil.  Plaintiffs have alleged that WMT and WMG committed tortious acts. Unlike in actions involving a contractual relationship between two parties, Plaintiffs had no recourse to protect themselves against alleged tortious conduct. Additionally, Plaintiffs would be harmed if WMG and WMT were treated as distinct corporate entities. Because WMG has sold the assets of its subsidiary, WMT, for $285 million, the very assets that it now says created the product in issue, and WMG has taken that money as its own, it has left WMT undercapitalized. As a result, dismissing WMG at this stage of the litigation would be an injustice to Plaintiffs. If, however, the corporate veil is pierced, and WMT is treated as merely the alter ego of WMG, WMG is subject to long-arm jurisdiction in Arkansas, further supporting this Court's personal jurisdiction.

**IV.    CONCLUSION**

Wherefore, Defendant WMG's Motion to Dismiss (Doc. 3) should be denied. Alternatively, should the Court determine that personal jurisdiction is inadequately pled, Plaintiffs respectfully request leave to amend their Complaint to address any such deficiency.

This 20th day of April 2017.                    Respectfully submitted,

                                                 /s/ *N. Kirkland Pope*
                                                 N. Kirkland Pope

14

GA Bar No. 584255
POPE McGLAMRY, P.C.
3391 Peachtree Road, NE, Suite 300
Atlanta, GA  30326
Ph: (404) 523-7706
Fx: (404) 524-1648
efile@pmkm.com

*Attorney for Plaintiffs*