**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**JOHNNY C. SIMPSON**, *et al.*                                                    **PLAINTIFFS**

**v.**                                              **Case No. 5:17-cv-00062-KGB**

**WRIGHT MEDICAL GROUP, INC.,** *et al.*                          **DEFENDANTS**

<u>**ORDER**</u>

Before the Court is separate defendant Wright Medical Group, Inc.'s ("WMG") motion to dismiss for lack of personal jurisdiction (Dkt. No. 3). Plaintiffs Johnny C. Simpson and Elizabeth Simpson filed a timely response (Dkt. No. 8-9), and WMG replied (Dkt. No. 15). Also before the Court is WMG and Wright Medical Technology, Inc.'s ("WMT") motion to dismiss, requesting partial dismissal of the complaint and specifically requesting dismissal of the following claims: Count III for strict liability manufacturing defect, Count V for negligent misrepresentation, Count VI for fraudulent misrepresentation, and Count VIII for punitive damages (Dkt. No. 4). The Simpsons timely responded (Dkt. No. 7), and defendants replied (Dkt. No. 16). For the reasons set forth below, the Court grants WMG's motion to dismiss for lack of personal jurisdiction (Dkt. No. 3). The Court grants in part and denies in part defendants' motion to dismiss for failure to state a claim (Dkt. No. 4).

**I.      Factual Background**

The Simpsons allege the following facts in their complaint. WMG and WMT are designers and manufacturers of prosthetic orthopedic products. WMG and WMT are both Delaware corporations with their principal places of business in Tennessee. WMG is the parent corporation of WMT. Cremascoli patented the "Profemur® Modular neck" by 1986 (*Id*., ¶ 28). In December 1999, WMG acquired Cremascoli and the line of Profemur hip products (*Id*., ¶ 29). WMG then

redesigned the Profemur line of hip products, including the modular "necks" and "stems." (*Id.*, ¶ 30). WMG rebranded the product as the "Wright Medical Profemur® Total Hip System." (*Id.*, ¶ 31). After August 25, 2009, WMG began to offer for distribution and sale in the United States Profemur modular necks made of a cobalt-chromium alloy rather than out of titanium, as had been the practice in the past (*Id.*, ¶ 33). The Simpsons further allege that WMG "has been a plaintiff in a civil action filed in this United States District Court, Case No. 3:10-cv-00033, filed on February 18, 2010, and represented to this District Court in the Complaint filed in that civil action" that WMG "does business as" WMT (*Id.*, ¶ 34).

In late 2012, Mr. Simpson had multiple Wright hip components installed in his left hip, including the "Profemur® TL Femoral Stem" and the "Profemur® Plus CoCr Modular Neck" (*Id.*, ¶¶ 10, 18). Mr. Simpson alleges that his orthopedic surgeon implanted the Wright artificial hip in Mr. Simpson (*Id.*, ¶ 11). Mr. Simpson claims that, "[b]ased upon the patient population that Wright intended its Profemur® artificial hip devices to be implanted in, at the time of implantation with his Wright Profemur® hip devices," Mr. Simpson "was an appropriate patient to be implanted with the Wright Profemur® hip devices he received." (*Id.*, ¶ 14). Mr. Simpson also claims that his orthopedic surgeon "recommended the Wright Profemur® hip device" to him and "indicated that the Wright Profemur® hip device was appropriate for him." (*Id.*, ¶ 15). Mr. Simpson claims that he reasonably relied upon his orthopedic surgeon in deciding to proceed with hip replacement surgery "and have Wright Profemur® hip device implanted in him." (*Id.*, ¶ 16). He further alleges that he and his orthopedic surgeon justifiably relied upon defendants' alleged false representations of material fact in deciding to utilize the device (*Id.*, ¶¶ 134, 135).

The Simpsons allege that defendants made false representations of material fact as to the safety and efficacy of the Wright Medical Profemur cobalt-chromium Neck when coupled with

the titanium modular neck in the Wright Medical Profemur Total Hip System (*Id.*, ¶¶ 47, 49, 53, 131). The Simpsons contend that, when the representations were made, defendants knew the representations were false (*Id.*, ¶¶ 68, 72, 73, 132). The Simpsons also allege that defendants intended to induce reliance (*Id.*, ¶ 133). Finally, the Simpsons maintain that Mr. Simpson was damaged as a result (*Id.*, ¶¶ 22, 25, 82, 83).

They maintain that, by about February 2, 2016, Mr. Simpson reported to his doctor, and his doctor recommended a revision surgery because Mr. Simpson presented with elevated cobalt ion levels, pain, and a weak abductor function (*Id.*, ¶ 22). This revision surgery was necessary because of corrosion between the cobalt-chromium modular neck and titanium stem designed and manufactured by WMG and WMT (*Id.*, ¶ 23).

The Simpsons assert that, at the time of Mr. Simpson's initial surgery, defendants had product complaint data indicating that combining cobalt-chromium Profemur hip components with titanium Profemur hip components would lead to increased adverse events for patients (*Id.*, ¶¶ 72-74). The Simpsons claim that, while defendants were aware of these risks, defendants made multiple false representations about the cobalt-chromium Profemur hip components, including that such components did not pose an increased risk of adverse events, that such components were structurally reliable, and that the components did not pose an increased risk of fretting or galvanic corrosion (*Id.*, ¶ 131). They further assert that the design of the Profemur hip components is inherently dangerous and defective (*Id.*, ¶ 75). They also claim that the Profemur hip components installed in Mr. Simpson did not comply with defendants' design specifications (*Id.*, ¶ 76). Finally, they claim that defendants failed to warn patients and the medical community about the risks of using the Profemur hip components (*Id.*, ¶¶ 79-81).

The Simpsons' complaint alleges that both WMG and WMT violated Arkansas state law due to their activities related to the Profemur hip device and related components. The Simpsons allege state-law claims of: (I) negligent design and failure to warn or instruct, (II) strict liability design defect, (III) strict liability manufacturing defect, (IV) strict liability failure to warn, (V) negligent misrepresentation, (VI) fraudulent misrepresentation, (VII) loss of consortium, and (VIII) punitive damages (Dkt. No. 1).

## II.     Federal Rule of Civil Procedure 12(b)(6) Standard of Review

Defendants move to dismiss the Simpsons' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts

in support of [her] claim which would entitle [her] to relief." *In re K-tel Int'l Sec. Litig.*, 300 F.3d 881, 904 (8th Cir. 2002) (citations omitted).

## III.     Discussion

WMG moves to dismiss the claims against it on the grounds that it is not subject to personal jurisdiction in Arkansas (Dkt. No. 3).  The Simpsons assert that WMG is subject to specific personal jurisdiction in Arkansas because WMG has had sufficient contacts with Arkansas related to the cobalt-chromium Profemur hip devices.  Furthermore, they assert that WMT's contacts with Arkansas should be held against WMG, as WMT is an alter-ego of WMG.  WMG and WMT also move to dismiss certain claims against them (Dkt. No. 4).  Finally, in their responses to WMG and WMT's motions to dismiss, the Simpsons seek the Court's leave to amend their complaint (Dkt. Nos. 7-1, at 11; 8-9, at 14).

### A.     Motion To Dismiss WMG For Lack Of Personal Jurisdiction

WMG argues that it should be dismissed as a defendant for lack of personal jurisdiction because it "is a holding company with no employees, business operations, or contacts with the State of Arkansas."  (Dkt. No. 3, at 1).  In support, WMG presents the affidavit of Amy Reeves, the Senior Director and Controller at WMT (Dkt. No. 3-2, ¶ 2).  Ms. Reeves avers that WMG "is not registered to do business in Arkansas, does not transact business in Arkansas, maintains no office or place of business in Arkansas, owns no real property in Arkansas, and has no clients or employees in Arkansas." (*Id*., ¶ 15).  Furthermore, Ms. Reeves represents that WMG "does not advertise, market, or offer services for sale in Arkansas." (*Id*., ¶ 16).  Ms. Reeves claims that WMT, not WMG, "manufacture[d], market[ed], and [sold] the PROFEMUR® hip implant components at issue in Plaintiff's Complaint." (*Id*., ¶ 18).  According to Ms. Reeves, WMG played no role in the labels or warnings related to the Profemur hip implant components at issue in this case (*Id*., ¶

16).  Ms. Reeves further declares that WMG and WMT "are separate corporate entities" with "separate accounting and banking records . . . ." (*Id.*, ¶¶ 13-14).  Ms. Reeves does concede that WMG is WMT's "parent company," and that WMG is WMT's "sole shareholder." (*Id.*, ¶ 9).

The Simpsons argue that WMG is subject to specific personal jurisdiction in Arkansas.  The Simpsons argue that:  (1) WMG purposefully availed itself of Arkansas' laws when it sold and installed the Profemur hip implants in Arkansas; (2) WMG has consented to specific jurisdiction in Arkansas because it has previously filed cases in Arkansas courts; (3) WMG, through its SEC filings, admits that it, not WMT, designed, manufactured, and marketed the Profemur hip implants; and (4) WMG is the alter ego of WMT.  After careful review of the pleadings, the Court finds that the Simpsons have failed to allege facts sufficient to establish specific personal jurisdiction over WMG in Arkansas.

### 1.    Personal Jurisdiction Standard

"To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant."  *Digi-Tel Holdings v. Protec Telecoms.*, 89 F.3d 519, 522 (8th Cir. 1996) (internal citations omitted).  Such a *prima facie* showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto."  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHS Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974)).  This Court may consider supporting affidavits to determine the question of personal jurisdiction without converting this motion to dismiss to a motion for summary judgment.  *See, e.g., Romak USA, Inc., v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004).

The party seeking to establish personal jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction.  *See Laseraim Tools, Inc. v. SDA Mfg.,*

*LLC*, 624 F. Supp. 2d 1027, 1029 (E.D. Ark. 2008) (internal citation omitted). Although the plaintiff bears the ultimate burden of proof, personal jurisdiction over the defendant need not be proved by a preponderance of the evidence until trial or until the Court holds an evidentiary hearing. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citing *Cutco Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Dakota Indus. Inc.*, 946 F.2d at 1387 (internal citations omitted).

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991) (citation omitted). Arkansas' long-arm statute confers jurisdiction to the maximum allowed under the Constitution. *Davis v. St. John's Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002). Therefore, the Court must determine if exercising personal jurisdiction over WMG comports with due process.

Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Courts must consider the "quality and nature" of the defendant's activities. *Id*. at 319. Personal jurisdiction does not exist when the forum state "has no contacts, ties, or relations" to the defendant. *Id*. (citation omitted). The Supreme Court has held that "it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted); *see Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985) ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated, contacts.") (internal quotations and citations omitted).

The Supreme Court has identified two types of personal jurisdiction: general and specific. "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citation omitted); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984) (finding that continuous and systematic contacts, even if limited, justify general personal jurisdiction). Specific jurisdiction, on the other hand, is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch*, 518 F.3d at 586 (quoting *Burger King*, 471 U.S. at 472). The rationale for specific personal jurisdiction is that when defendants avail themselves "of the privilege of conducting business" in the forum state such that their "activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require [them] to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476.

In the Eighth Circuit, the same factors are considered whether the issue is one of general or specific personal jurisdiction. Those factors are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) (citation omitted). The first three factors are more important than the last two, and the

third factor is only relevant to specific jurisdiction. *Id.*; *see DOXA Total Design Strategy v. DOXA Enter., Inc.*, No. 4:10-cv-00717, 2011 WL 13232558, at *3 (E.D. Ark. Jan. 26, 2011).

Here, the Simpsons do not argue that WMG is subject to general personal jurisdiction, so the Court will not consider that argument. Based on the foregoing authorities, in sum, to survive the instant motion to dismiss, the Simpsons must have—*via* allegations, affidavits, and exhibits— established a *prima facie* case that the exercise of specific personal jurisdiction over WMG comports with due process. The Simpsons must have averred sufficient facts in the record to establish sufficient minimum contacts by WMG related to the Profemur hip implants in Arkansas such that WMG could have reasonably anticipated being haled into court in Arkansas. These allegations must be considered in the light most favorable to the Simpsons, as they are asserting jurisdiction.

### 2. WMG Has Not Purposefully Availed Itself Of Arkansas' Laws

WMG argues that it should be dismissed for lack of personal jurisdiction as it is merely a holding company with no contacts to Arkansas. The Simpsons argue that WMG is subject to specific personal jurisdiction because WMG intentionally sold its Profemur hip implants, including the cobalt-chromium components, in Arkansas, where those components were implanted into Mr. Simpson's hip and subsequently failed (Dkt. No. 8-9, at 10). WMG avers that its subsidiary, WMT, designed, marketed, and sold the device at issue (Dkt. No. 3-2). Ms. Reeves' affidavit concedes that WMT "manufacture[d], market[ed], and [sold] the PROFEMUR® hip implant components at issue in Plaintiff's [sic] Complaint." (*Id.*, ¶ 18). WMG does not argue that selling and marketing the devices in question would not subject a defendant to personal jurisdiction in Arkansas; rather, WMG argues that it is a holding company with no employees and it did not

manufacture, market, or sell the Profemur hip implant components in Arkansas. WMG supports these contentions via Ms. Reeves' affidavit (*Id.*).

Except for several regulatory filings attached to their response, which are addressed below, the Simpsons simply rely upon their allegations that WMG manufactured, marketed, and sold the hip implant components in Arkansas. There is no question that the Profemur hip implants were marketed and sold in Arkansas; rather, the point at issue is which entity marketed and sold those hip components in Arkansas. The Simpsons allege that WMG marketed and sold the Profemur hip implants in Arkansas; WMG has presented an affidavit rebutting those allegations (Dkt. No. 3-2). The Simpsons have presented no affidavits or exhibits, with the exception of the SEC filings and reference to an earlier filed lawsuit in this United States District Court, discussed below, to rebut Ms. Reeves' affidavit. In the face of WMG's averments, the Simpsons' bare reliance upon SEC filings is insufficient to justify the exercise of personal jurisdiction. *See Dever*, 380 F.3d at 1073 ("When a defendants raises through affidavits . . . a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to provide jurisdiction by affidavits, testimony or documents.") (quoting *Jet Charter Serv., Inc. v. W. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990)). The Simpsons must present more to rebut WMG's averments that it has no contacts with the State of Arkansas.

The Simpsons presented several of WMG's SEC filings in support of personal jurisdiction over WMG in Arkansas (Dkt. Nos. 8-3, 8-6, 8-8). According to plaintiffs, WMG's 2001 Form 10-K demonstrates that WMG "offered orthopaedic surgeons a broad range of reconstructive devices" and that "it acquired the Profemur hip system." (Dkt. No. 8-9, at 5-6). Plaintiffs make this assertion based upon several statements in the 2001 Form 10-K. In its opening paragraph, the 2001 Form 10-K states that, "Wright Medical Group, Inc. (the 'Company') is a global orthopaedic device

company specializing in the design, manufacture and marketing of reconstructive joint devices . . . ." (Dkt No. 8-3, at 3).  Furthermore, the 2001 Form 10-K states, "[T]he Company is currently selling [Profemur] in the U.S. . . . ." (*Id.*, at 16).  WMG's 2014 Form-10K/A includes similar statements (*see* Dkt. No. 8-7).  WMG's 2014 Form 10-Q states, "We have received claims for personal injury against us associated with fractures of our PROFEMUR® long titanium modular neck product . . . ." (Dkt. No. 8-8, at 41).  The same form also states, "Beginning in 2009, we began offering a cobalt-chrome version of our PROFEMUR® modular neck." (*Id.*).  Plaintiffs argue that these statements by WMG serve as admissions that WMG (not WMT) sells Profemur hip implants in the United States.

Neither the 2001 Form 10-K, the 2014 Form 10-K/A, nor the 2014 Form 10-Q define "we" or "us," so it is difficult to determine whether WMG intended to refer to WMT separately.  The 2001 Form 10-K lends some support to WMG's contention that WMG and WMT are separate entities.  For example, the 2001 Form 10-K states that WMG "had no operations until . . . [it] acquired majority ownership of the Company's predecessor, Wright Medical Technology, Inc. ('Wright' or the 'Predecessor Company') . . . ." (Dkt. No. 8-3, at 4).  The term "Predecessor Company" connotes separateness.  This statement supports WMG's contention that WMT is an operational subsidiary with a separate existence.  Furthermore, the 2014 Form 10-Q includes a disclaimer stating, "The accompanying unaudited condensed consolidated interim financial statements include our accounts and those of our domestic and international subsidiaries, all of which are wholly-owned subsidiaries." (Dkt. No. 8-8, at 14).

These SEC forms do not demonstrate that Arkansas may exercise personal jurisdiction over WMG.  These forms do not clearly indicate that, at the time of the events giving rise to the Simpsons' claims or at the time this complaint was filed, WMG marketed and sold the Profemur

hip implants. Even if these forms indicate to some extent that WMG marketed and sold Profemur hip implants, "[c]ourts have recognized that companies may omit distinctions between related corporate entities in their SEC filings, and still insist on these distinctions when haled into court." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 824 (D. Ariz. 2016). Indeed, other courts have observed that "[t]he use of a common trade name and references to a conglomerate as a collective entity, when included in statements 'intended to be read by the consuming public, cannot create a single entity structure given the sophistication and complexity of today's corporate world.'" *Fisher & Paykel Healthcare Ltd. v. ResMed Corp.*, No. 16-cv-2068, 2017 WL 3635105, at *2 (S.D. Cal. Jan. 11, 2017) (quoting *Williamson v. Verizon Communications, Inc.*, No. 11-cv-4948, 2013 WL 227691, at *3 (S.D.N.Y. Jan. 22, 2013) (internal quote and citation omitted)).

The Simpsons also present evidence that WMG previously filed suit in the United States District Court for the Eastern District of Arkansas (Dkt. No. 8-2). The Simpsons cite this Court to prior litigation in which WMG brought an action for declaratory judgment, injunctive relief, and money damages arising out of alleged breaches of non-compete agreements. *See Wright Medical Group, Inc. d/b/a Wright Medical Technology, Inc., et al. v. Kevin Darr, et al.*, No. 3:10-cv-00033-JLH, Dkt. No. 1, ¶ 6 (E.D. Ark. Feb. 18, 2010). In that action, the named plaintiff was "Wright Medical Group, Inc. d/b/a Wright Medical Technology, Inc." (*Id.*, at 1). WMG specifically stated that it operated "through its wholly owned subsidiary" WMT (*Id.*, ¶ 1). The complaint described conduct attributed to "Wright" without defining precisely that term.

The Simpsons argue that, by virtue of this prior suit, WMG has sufficiently availed itself of Arkansas' laws so as to allow Arkansas to exercise specific personal jurisdiction over WMG. It must be conceded, of course, that WMG did consent to personal jurisdiction in Arkansas during that prior action. Consent to a forum's personal jurisdiction in a prior case does not, by itself,

constitute indefinite consent to be haled into court in that jurisdiction. *See In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100-101 (D.D.C. 2008) ("[C]onsent to personal jurisdiction in one case does not provide personal jurisdiction in another.") (citing *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2nd Cir. 1991)). The lodestone of the specific personal jurisdiction analysis is whether "the trial court has jurisdiction over the person of a defendant *at the time the suit is commenced.*" *Pholmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (emphasis added). Therefore, the prior suit filed by WMG does not prove WMG has given ongoing consent to be sued in Arkansas.

The Simpsons also point out that WMG previously insisted that litigation occur in an injured plaintiff's home state (*See* Dkt. No. 8-7 (WMG filed a motion to dismiss for *forum non conveniens* in a case brought in Tennessee)). For example, WMG previously argued that a case brought by Oklahoma citizens against WMG in Tennessee should have been filed in Oklahoma. *Harrison v. Wright Med. Tech., Inc.*, No. 2:14-cv-02739, 2015 WL 2213373, at *4 (W.D. Tenn. May 11, 2015). None of WMG's arguments in the prior Tennessee case affect WMG's contacts with Arkansas. The case cited by plaintiffs occurred in Tennessee, with distinct plaintiffs and distinct factual circumstances. WMG's arguments in those cases have no effect upon WMG's contacts with Arkansas.

Based upon the findings above, the Court concludes that the Simpsons have not demonstrated sufficient contacts between WMG and Arkansas to establish this Court's specific personal jurisdiction over WMG.

### 3. WMG Is Not WMT's Alter Ego

The Simpsons also argue that WMG is subject to specific personal jurisdiction in Arkansas because WMG is the alter ego of WMT. WMT has conceded that it is subject to personal

jurisdiction in Arkansas (Dkt. No. 3-2, ¶ 18 ("Wright Medical Technology did manufacture, market, and sell the PROFEMUR® hip implant components at issue in Plaintiff's complaint.")). To support their argument that WMT is the alter-ego of WMG, the Simpsons point to the following allegations: (1) WMT is a wholly-owned subsidiary of WMG; (2) WMG and WMT have identical corporate addresses; (3) WMG and WMT have identical corporate officers; (4) WMG holds all of WMT's convertible debt; (5) WMG "potentially left" WMT undercapitalized due to WMG's sale of OrthoRecon; (6) WMG treated the financial profit from the OrthoRecon sale as its own, not WMT's; and (7) by WMG's own admission, WMT is a "department or division" of WMG (Dkt. No. 8-9, at 13-14).

A court may pierce the corporate veil to assert personal jurisdiction over a nonresident defendant on the basis of the corporation's contacts with the state if the corporation is the nonresident defendant's alter-ego. *Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975). The Eighth Circuit summarized this doctrine in *Epps v. Stewart Information Services. Corporation*, as follows:

> [P]ersonal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent *so controlled and dominated* the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego.

327 F.3d 642, 648-49 (8th Cir. 2003) (emphasis added).

Arkansas law governs this Court's determination whether to pierce WMT's corporate veil. *See Lakota Girl Scout Council*, 519 F.2d at 638. In Arkansas, equity governs whether a corporate veil should be pierced. *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. App. 1981) (citation omitted). The corporate veil should not be pierced easily. *Banks v. Jones*, 390 S.W.2d 108, 111 (Ark. 1965). The fact that a parent company holds a controlling interest in a subsidiary or shares

officers with the same is not dispositive. *Epps*, 327 F.3d at 649 ("A parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers.") (citing *Rounds & Porter Lumber Co. v. Burns*, 225 S.W.2d 1, 2 (Ark. 1949)).

In *Epps*, the Eighth Circuit found that general personal jurisdiction did not exist over a nonresident parent corporation under the alter-ego theory. 327 F.3d at 649. There, the plaintiffs alleged that the nonresident parent corporation wholly-owned the resident subsidiary and that the parent corporation included the subsidiary's assets and liabilities in the parent's SEC 10-K filing. *Id*. The Court noted that the "SEC 10-K filing raise[d] questions about [subsidiary corporation's] independence from [parent corporation]," but ultimately found that the allegations were insufficient to establish "the nature and quality of contacts necessary to support an exercise of general personal jurisdiction." *Id*. at 650 (internal quote omitted).

Alternatively, in *Lakota Girl Scout Council*, the Eighth Circuit upheld a district court's assertion of personal jurisdiction over a nonresident owner of a resident corporation. 519 F.2d at 638. There, the evidence indicated that the nonresident owner: (1) was the sole shareholder, incorporator, and contributor to the resident corporation, (2) was the only lender and borrower to the resident corporation, (3) was the owner of the building where the resident corporation was headquartered, and (4) used a vehicle purchased by the resident corporation for his personal use. *Id*.

The Court finds that the facts alleged by plaintiffs are more similar to those presented in *Epps* than those in *Lakota Girl Scout Council*. The allegations, affidavits, and exhibits presented show that WMG has respected WMT's corporate veil. First, the Simpsons' complaint contains no allegation that WMT is the alter ego of WMG (*See* Dkt. No. 1). In their response, the Simpsons

assert that WMG's SEC filings describe WMT as a "department or division of WMG," yet the Court, in its review of the cited exhibits, failed to find any such language (Dkt. Nos. 8-9, at 14; 8-2, at 5-6; 8-8, at 55-57). Further, in their response, the Simpsons assert that WMG sold "OrthoRecon" and claimed the proceeds of the sale for WMG (Dkt. No. 8-9, at 13-14). This assertion, which is somewhat supported by WMG's 2014 Form 10-Q filing, fails to explain whether OrthoRecon was a WMT-owned asset (*See* Dkt. No. 8-8, at 55-57). It is entirely possible—and consistent with the proffered 2014 Form 10-Q—that WMG, not WMT, owned OrthoRecon. Therefore, even if WMG sold OrthoRecon and pocketed the proceeds, this fact standing alone provides no support to the Simpsons' argument that WMG purposefully raided WMT's coffers to prevent satisfaction of a future adverse judgment. Further, while WMG concedes that its officers are identical to WMT's, this fact is not dispositive. *Epps*, 327 F.3d at 649 (citation omitted). While it is true that WMG and WMT share an address, this "bespeak[s] a certain degree of integration between the two corporations," not a "misuse of corporate form." *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364 (7th Cir. 2016) (declining to pierce corporate veil where parent and subsidiary shared names, directors, website, and address). Finally, the Simpsons have failed to rebut WMG's averment that its accounting and banking records are separate from WMT's (Dkt. No. 3-2, ¶¶ 13-14)).

Based on a review of the record before the Court, the Court is not convinced that the Simpsons have made allegations sufficient to pierce the corporate veil between WMG and WMT. While the Simpsons are not required to produce dispositive evidence in support of their veil-piercing allegation at this stage of the pleadings, they do carry the burden of proof on personal jurisdiction. *See Laseraim Tools, Inc.*, 624 F. Supp. 2d at 1030. Given the paucity of the allegations, exhibits, and affidavits presented by the Simpsons, and resolving all factual disputes

in favor of them, the Court finds that the Simpsons have failed to make a *prima facie* showing that WMG so dominates WMT that WMT is merely WMG's alter ego. Therefore, the Court determines it does not have personal jurisdiction over WMG. WMG is dismissed as a defendant from this action.

## B. Motion To Dismiss Counts III, V, VI, And VIII

### 1. Count III: Manufacturing Defect

Defendants argue that the Simpsons have failed to allege facts sufficient to make out a manufacturing defect claim because they have not pleaded any facts describing a "deviation from design." To state a cause of action under strict liability, a plaintiff must plead that: (1) he has sustained damages; (2) defendant was engaged in the business of manufacturing, assembling, selling, leasing, or distributing the product; (3) the product was supplied by defendant in a defective condition which rendered it unreasonably dangerous; and (4) the defective condition was the proximate cause of plaintiff's damages. Ark. Code Ann. § 4-86-102(a); *Pilcher v. Suttle Equip. Co.*, 223 S.W.3d 789, 794 (Ark. 2006) ("[Arkansas] law on the theory of strict liability is patterned after the Restatement (Second) of Torts § 402(A) . . . ."). Arkansas law encompasses three types of products liability claims—manufacturing defects, design defects, and inadequate warnings. *West v. Searle & Co.*, 806 S.W.2d 608, 610 (Ark. 1991).

Manufacturing defect claims are distinct from design defect claims. *See Lee Cnty., Ark. v. Volvo Const. Equip. N. Am., Inc.*, No. 2:07-cv-00082, 2008 WL 4999063, at *4 (E.D. Ark. Nov. 20, 2008); *see also In re Temporomandibular Joint (TMJ) Implants Products Liability Litig.*, 97 F.3d 1050, 1054 n.4 (8th Cir. 1996) (finding that "deviation from the norm" is the correct test in manufacturing defect cases). Manufacturing defects involve a configuration of a product that deviates from the intended design, while design defects involve a design that is executed according

to plan but produces unintended and unwanted results. *See Linden v. CNH America, L.L.C.*, 673 F.3d 829, 834 (8th Cir. 2012).

The Simpsons argue that they have alleged sufficient facts to put defendants on notice of their manufacturing defect claim. They allege that components of the Profemur hip device implanted in Mr. Simpson were "manufactured such that the tolerances between the stem and neck components did not comply with Wright's design specifications." (Dkt. No. 1, ¶ 76). This allegation was incorporated into the Simpsons' manufacturing defect claim (*See id.*, ¶ 101). Furthermore, the Simpsons' manufacturing defect claim also included an allegation that:

> The Wright Medical Profemur Total Hip System used in Plaintiff Johnny Simpson's hip replacement surgery was supplied in a defective condition in its manufacture, such that it would experience motion, fretting and corrosion at the stem-neck juncture, rendering it unreasonably dangerous.

(*Id.*, ¶ 104).

These allegations, liberally construed, assert that the Profemur hip implants installed in Mr. Simpson were defectively manufactured and unreasonably dangerous. Therefore, the Court finds that, under the pleading standards articulated in *Twombly* and *Iqbal*, the Simpsons' complaint alleges sufficient facts to put defendants on notice of the manufacturing defect claim. The Court denies defendants' motion to dismiss this claim.

## 2.    Count V:  Negligent Misrepresentation

Defendants assert that Arkansas does not recognize a cause of action for negligent misrepresentation. In their reply, the Simpsons concede that this is so (Dkt. No. 7-1, at 11 (stating that, with the sole exception of the negligent misrepresentation claim, the motion to dismiss should be denied)). The Arkansas Supreme Court has declined to recognize the tort of negligent misrepresentation. *S. County, Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994). The

Simpsons cite no case to the contrary. Therefore, the Court grants defendants' motion with respect to this claim and dismisses the negligent misrepresentation claim.

### 3. Count VI: Fraudulent Misrepresentation

Defendants contend that the complaint fails to state a claim for fraudulent misrepresentation upon which relief may be granted. To state a claim for fraud in Arkansas, the following elements must be well pled: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient information upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) resulting damage. *Brennan v. Wadlow*, 270 S.W.3d 831, 834-35 (Ark. 2008). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, claims for fraud must be plead with particularity. A complaint must allege "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). Complaints that fail to state the "who, what, where, when, and how of the alleged fraud" do not satisfy Rule 9(b)'s heightened pleading standard. *Id.*

Plaintiffs allege that defendants made false representations to Mr. Simpson and his doctor regarding the safety and efficacy of the Profemur neck and stem implants. The Simpsons allege that defendants repeatedly misrepresented "to Plaintiff and/or his healthcare providers" that the Profemur hip components did not lead to "an increased risk of adverse events" and that the hip components had "guaranteed structural reliability" and lacked "significant micromovement" and "fretting corrosion." (Dkt. No. 1, ¶ 131). Defendants also allegedly represented that their product data "did not indicate an increased risk of galvanic corrosion," and that the hip components, as designed, had "no reported failures." (*Id.*). Furthermore, defendants allegedly represented that the

cobalt-chromium modular necks resulted in less fretting than in titanium modular necks (*Id*.). The Simpsons assert that defendants had been informed, prior to December 14, 2012, that the cobalt-chromium modular necks were corroding in patients and that they posed an increased risk to patients of fretting and corrosion (*Id*., ¶¶ 68, 72-74). The Simpsons further assert that defendants made these representations with the intent to induce the medical community, Mr. Simpson's doctor, and Mr. Simpson himself to utilize the cobalt-chromium Profemur modular neck (*Id*., ¶ 133). In addition, the Simpsons assert that Mr. Simpson's physician did in fact rely upon defendants' false representations and therefore recommended the Profemur hip device to Mr. Simpson (*Id*., ¶¶ 15, 134). When he chose the Profemur hip device, Mr. Simpson relied upon the representations of his physician (*Id*., ¶¶ 16, 135). The Simpsons aver that as a direct, proximate, and foreseeable result of that reliance, Mr. Simpson suffered damages (*Id*., ¶¶ 22, 25, 82, 83, 134, 136).

Defendants argue that the Simpsons have "fail[ed] to set forth the essential who, what, when, where, and how of their fraud allegations." (Dkt. No. 4-1, at 7). Defendants concede that the complaint alleges that WMT made representations between 2009 and December 14, 2012, regarding the cobalt-chromium hip implants (*Id*.). Defendants argue, however, that the Simpsons "never allege with any specificity when, where, or how such representations reached the Plaintiffs." (*Id*.). Defendants further argue that the Simpsons do not specify which entity—WMG or WMT—made the allegedly fraudulent representations (*Id*.). According to defendants, the Simpsons also fail to allege justifiable reliance because the complaint "never describes when, why, or where Plaintiffs decided to rely on WMT's statements, the particular statement or statements they relied on, why such reliance was 'justifiable,' or whether they even considered any alternatives to implanting the PROFEMUR® system." (*Id*., at 8).

The Simpsons respond that their allegations are sufficiently specific. They point to the specific publication they identified where a false representation was made (*Id*., ¶ 53). The Simpsons also note that they alleged that Mr. Simpson and his doctor relied upon defendants' false representations when they decided to utilize the cobalt-chromium hip components (*Id*., ¶¶ 15-16, 134-135). The Simpsons argue that WMG and WMT are one and the same, so distinguishing them was unnecessary (Dkt. No. 7-1, at 8). Finally, the Simpsons assert that not only did they allege the "who, what when, where, and how," but they also explained that "prioritization of profit" motivated defendants' alleged misrepresentations (*Id*.).

The Court finds that the Simpsons' fraudulent misrepresentation allegations satisfy Rule 9(b). The Court concludes the complaint sufficiently pleads the five elements of fraudulent misrepresentation to satisfy the controlling legal standard. Further, the Court concludes that, under the specific circumstances of this case, based on what defendants assert about their business relationship, the Simpsons were not required to differentiate between WMG and WMT. *See Maher v. Sempris, LLC*, No. 13-2202, 2014 WL 4749186, at *3 (D. Minn. Sept. 24, 2014) (holding that allegations of fraud were sufficiently pled because defendants were not "left to guess who was responsible for the alleged fraud.") (citing *Trooien v. Mansour*, 608 F.3d 1020, 1030 (8th Cir. 2010)). Therefore, the Court denies defendants' motion to dismiss the claim for fraudulent misrepresentation.

### 4.      Count VIII:  Punitive Damages

Defendants argue that the Simpsons' punitive damages claim should be dismissed, as should any potential request for punitive damages as a remedy (Dkt. No. 4-1, at 9-10). As Mr. Simpson conceded in his reply, punitive damages are not an independent cause of action in Arkansas. *See One Bank & Trust v. Galea*, No. 4:11-cv-00567, 2012 WL 1030113, at *4 (W.D.

Ark. Mar. 27, 2012). The Court will not construe the Simpsons' request for punitive damages as a separate claim for this reason.

The Simpsons urge the Court, in the alternative, to construe their punitive damages claim as a request for an award of punitive damages as to Counts I and VI. (Dkt. No. 7-1, at 11). The Court finds that it is proper to construe the Simpsons' claim for punitive damages as a request for an award of punitive damages in relation to their claims set forth in Counts I and VI.

To recover punitive damages in Arkansas, a plaintiff must allege that the defendant is liable for compensatory damages and that one of the following two factors was present and related to the injury for which compensatory damages are awardable:

(1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or

(2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206. While allegations regarding "fraud or mistake" require particularized pleading, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*." Fed. R. Civ. P. 9(b) (emphasis added); *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. and Research*, 851 F.3d 800, 804 (8th Cir. 2017) (noting that the word "generally" requires plaintiffs to plead under Rule 8). The complaint sufficiently alleges that defendants knew or ought to have known that the cobalt-chromium hip components would naturally and probably result in injury, yet defendants continued to implant those components in patients. For example, the Simpsons pled that defendants possessed product complaint data indicating that the cobalt-chromium hip components posed an increased risk of adverse events, yet defendants allegedly continued to use those components (Dkt. No. 1, ¶¶ 72-73). Such allegations,

taken in the light most favorable to the non-moving party, are sufficient to support a request for punitive damages in Arkansas. The Court therefore finds that the Simpsons have alleged sufficient facts to seek punitive damages for the conduct alleged in Counts I and VI of the complaint.

## C.    Motion For Leave To Amend

In their responses to the motions to dismiss, the Simpsons request leave to amend their complaint to address any deficiencies (Dkt. Nos. 7-1, at 11; 8-9, at 14). They did not file a separate motion for leave to amend or attach a copy of their proposed amended complaint to their request to amend. After the opposing party files a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court should give leave freely when justice so requires, but "parties do not have an absolute right to amend their pleadings . . . ." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). The Local Rules of the United States District Court for the Eastern and Western District of Arkansas require a party moving to amend to "attach a copy of the amendment to the motion." Local Rule 5.5(e). At this time, the Court denies without prejudice the Simpsons' request to amend their complaint. If the Simpsons desire to file an amended complaint, they should file a proper motion seeking the Court's leave to do so.

## IV.    Conclusion

The Court concludes that the Simpsons have not established a *prima facie* case of specific personal jurisdiction over WMG and, therefore, grants WMG's separate motion to dismiss (Dkt. No. 3). For the foregoing reasons, the Court denies defendants' motion to dismiss Counts III and VI and grants defendants' motion to dismiss Count V. The Court will not consider the Simpsons' request for punitive damages as a separate claim but will instead construe it as a request for

punitive damages in relation to Counts I and VI. At this time, the Court denies without prejudice the Simpsons' request to amend their complaint.

It is so ordered, this the 30th day of March, 2018.

_____
Kristine G. Baker
United States District Judge